UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMON HAMPTON,

        Petitioner,                             Case No. 2:20-cv-12574
                                                        Honorable Linda V. Parker

v.

NOAH NAGY,

        Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING A CERTIFICATE OF APPEALABILITY, AND (3) GRANTING PERMISSION TO APPEAL IN FORMA PAUPERIS**

Petitioner Jamon Hampton, a Michigan prisoner, filed this action under 28 U.S.C. § 2254. Hampton challenges his convictions, following a jury trial in the Ingham County Circuit Court, of second-degree murder,[1] assault with intent to commit murder,[2] carrying a dangerous weapon with unlawful intent,[3] and possession of a firearm during the commission of a felony.[4] The trial court imposed a controlling sentence of 400 to 880 months for the murder conviction and lesser terms for his other convictions.

---

[1] Mich. Comp. Laws § 750.317
[2] Mich. Comp. Laws § 750.83
[3] Mich. Comp. Laws § 750.226.
[4] Mich. Comp. Laws § 750.227b(1).

1

Hampton raises two claims in his federal habeas petition: (1) the prosecutor committed misconduct during closing argument, and (2) his sentence is disproportionate and unreasonable. The Court is denying the petition because the claims are without merit. The Court also is denying Petitioner a certificate of appealability but granting him permission to appeal in forma pauperis.

## I. Background

Hampton was charged in connection with the shooting of two individuals on a residential street in Lansing, Michigan June 26, 2013. The Michigan Court of Appeals summarized the facts as follows:

> On June 25, 2013, shortly before midnight, defendant and his brother, Valentino Stewart, rode with a friend, Mark Williams, to a residential area near the intersection of Pine and Lapeer Streets in Lansing. Based on the conversation between the brothers, Williams understood that the brothers were planning to confront someone who earlier had attacked Stewart. Stewart was carrying a handgun, and Williams offered to let defendant use his AR-15 rifle that was stored in the trunk of his car.
>
> When they arrived at their destination, Williams saw two people on the sidewalk. Stewart stated, "That's him," and Williams parked the car. The brothers ran from Williams' vehicle, with defendant carrying the AR-15. Moments later, defendant returned to the car and asked Williams if the AR-15 had a safety that was disabling the gun; Williams replied that it did and reached through the window and took the safety off. Defendant again ran from the vehicle and about five seconds later, Williams heard his AR-15 being fired rapidly about twenty to twenty-five times. Michelle Waters and her fiancé, Anthony Kye, who had no connection to the brothers or the people whom the brothers were seeking, were talking and smoking outside their residence on Pine Street. Kye was killed after being struck by several bullets. Defendant was convicted after a jury trial of

> second-degree murder in connection with Kye's death, along with assault with intent to commit murder, carrying a dangerous weapon with unlawful intent, and felony firearm.

*People v. Hampton*, No. 329114, 2016 WL 6780633, at *1 (Mich. Ct. App. Nov. 15, 2016) (footnote omitted).

At trial, Mark Williams provided most of the incriminating evidence against Hampton. Williams testified pursuant to his own plea that he drove Hampton and Stewart to the scene, that Hampton borrowed Williams' AR-15, that he turned the safety off for Hampton when the gun would not fire, that he then heard his firearm being shot, and that he later heard Hampton say that they had shot the wrong person. (4/7/15 Trial Tr. at 143-217, ECF No. 6-12 at Pg ID 389-07.) Other witnesses testified to the dispute leading to the shooting and to the incriminating statements made by the participants after the shooting.

During closing argument, the prosecutor addressed Williams' credibility. The prosecutor suggested that the jury should credit his testimony because he came forward on his own, confessed, and pled guilty knowing he would receive a lengthy sentence. (4/16/15 Trial Tr. at 33-37, ECF No. 6-16 at Pg ID 575-76.) The prosecutor also referred to the fact that the deceased victim's family was seated in the front row of the courtroom throughout the trial and were awaiting justice. (*Id* at 51-52, Pg ID 580.) The jury convicted Hampton and the court sentenced him as indicated above.

Hampton appealed his conviction, raising the two claims currently asserted in his federal habeas petition.[5] The Michigan Court of Appeals affirmed in an unpublished opinion. *Hampton*, 2016 WL 6780633. Hampton then filed an application for leave to appeal in the Michigan Supreme Court, but it was denied by standard form order. *People v. Hampton*, 933 N.W.2d 264 (Mich. 2019) (Table).

## II. Standard of Review

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (quoting

---

[5] Hampton initially also asserted an unexhausted claim of ineffective assistance of appellate counsel. (See ECF No. 1.) He agreed to delete the claim after Respondent filed a motion to dismiss the case for lack of exhaustion. (See ECF Nos. 5, 7, and 10.)

4

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413).

### III. Discussion

#### A. Prosecutorial Misconduct

Hampton asserts that two sets of remarks made by the prosecutor during closing argument rendered his trial fundamentally unfair. The Michigan Court of Appeals, after noting that the claims were unpreserved, found that they were without merit. Respondent asserts that the claims are procedurally defaulted by Hampton's failure to object at trial, but because Hampton asserts that his trial counsel was ineffective for failing to object to the alleged misconduct, this Court deems it more efficient to resolve the claim on the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)) (indicating the procedural default is not a jurisdictional matter).

Hampton first argues that the prosecutor improperly vouched for Williams' credibility. The prosecutor stated during his closing argument:

> [Williams] essentially came forward on his own, came back from Mississippi and confessed to a crime. He implicated himself in that crime, and in doing so, he came back and accepted responsibility to the point where he could be incarcerated for the next 45 years. Ask

5

> yourself whether or not he had to do that, because based on the evidence and testimony you've heard, we know that after he had come back and essentially confessed, implicated himself in this particular case as the detective said on July 23rd, implicated himself to the point that he could be charged with murder, he was then free in Mississippi for the next three months. He was free to run, to hide, to leave the area and never be seen again. . . . He didn't run. He came back and he told the detectives exactly what happened.
>
> I ask that whenever you consider whether or not Mark Williams is telling you the truth, think about that one fact and think about the enormity of the sentence that he took; 45 years. Now, yes, he could get out in 15, but he's already told you that the time he's spent in the Department of Corrections is a time he will spend being labeled as a snitch, someone who has come forward and testified, and from what he told you, and from what we know from the other witnesses, doing something like that puts his life at risk every day in the Department of Corrections. Keep that in mind when you're considering Mark Williams' testimony.

(4/16/15 Trial. Tr. at 32-33, ECF No. 6-16 at Pg ID 575.)

The Michigan Court of Appeals recited the applicable standard for prosecutorial misconduct and then concluded that the remarks did not constitute improper vouching:

> A prosecutor may not vouch for the credibility of a witness by claiming that he or she has special knowledge concerning a witness' truthfulness. *People v. Bahoda*, 448 Mich. 261, 276 (1995). Prosecutors, however, have great latitude in their arguments, and may comment on the credibility of a witness or argue from the evidence that a particular witness is worthy or not worthy of belief. *People v. Dobek*, 274 Mich. App. 58, 66 (2007). Here, the prosecutor properly argued from the evidence that Williams was a credible witness because he implicated himself in the offense and did not attempt to escape from possible charges while he was free in Mississippi. The comments did not suggest that the prosecutor had special knowledge

6

>as to Williams' truthfulness, but only that the circumstance suggested that Williams was worthy of belief.

*Hampton*, 2016 WL 6780633, at *2. The state court's decision did not involve an unreasonable application of the Supreme Court's clearly established standard for claims of prosecutorial misconduct.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004). A prosecutor's conduct will violate a criminal defendant's constitutional rights only if it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). To obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of the claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting *Harrington*, 562 U.S. at 103).

With respect to this allegation of misconduct, improper vouching "occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the [prosecutor] behind that witness." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999). The challenged argument urged the jury to believe Williams in light of his self-incriminating statements to police. The fact that Williams confessed and

7

pled guilty under terms that called for a lengthy sentence allowed for a fair inference that his testimony was thereby more likely to be truthful. The opposite inference—that Williams implicated Hampton once he was identified as a suspect in order to minimize his own culpability—was an argument raised by Hampton's counsel in closing. (4/16/15 Trial Tr. at 58-61, ECF No. 6-16 at Pg ID 581-82.) Both arguments were fair ones to raise based on Williams' testimony. Hampton fails to establish entitlement to habeas relief based on this allegation.

Hampton next argues that the prosecutor improperly appealed to the jury's sympathies when he referred to the presence of the victim's family members in the courtroom. The prosecutor stated during his closing argument:

> [A]s I finish my remarks I bring you back to Anthony Kye. Anthony Key's family sits there in that front row. This case started on July 26, 2013. They have waited and they continue to wait patiently for justice. Justice, however, after we're done with our remarks, rests in your hands.

(*Id.* at 51, Pg ID 580.) The Michigan Court of Appeals found that the reference to the victim's family did not constitute reversible error:

> [T]he prosecutor's comment about the victim's family was not a blatant appeal to the jury's sympathy nor was it inflammatory, and it was the only reference to the victim's family made by the prosecutor. A review of the record indicates that the prosecutor also asked the jurors to be "fair and just" as they had sworn to do when taking the oath to serve on the jury, and to consider all of the evidence and to "keep an open mind." Considered in context, these comments were not improper. *See Watson*, 245 Mich. App. at 591-592. Additionally, the trial court instructed the jurors not to let their decision be influenced by sympathy, and that the comments of the attorneys were

8

not evidence. The jury is presumed to follow the court's instructions. *People v. Abraham*, 256 Mich. App 265, 279 (2003).

*Hampton*, 2016 WL 6780633, at *3.

The prosecutor's comment regarding the victim's family was brief and did not form a significant part of his closing argument. The rest of the closing argument focused on the evidence presented at trial. The isolated reference to the victim's family was insufficiently pronounced to constitute a due process violation. *See Byrd v. Collins*, 209 F.3d 486, 532 (6th Cir. 2000). This portion of Hampton's claim is also defeated by the fact that, as the court of appeals noted, the trial court instructed the jury that they were not to let sympathy or prejudice influence their decision. Juries are presumed to follow such instructions, and Hampton does not provide a reason why that presumption should not be applied here. *See Cockream v. Jones*, 382 F. App'x 479, 486 (6th Cir. 2010); *see also Welch v. Burke*, 49 F. Supp. 2d 992, 1006 (E.D. Mich. 1999). The state court's adjudication of this second allegation of misconduct did not involve an unreasonable application of established Supreme Court standards.

Hampton's claim of prosecutorial misconduct is therefore without merit.

### B. Sentencing Claim

Hampton next argues that his sentence was disproportionate and unreasonable in light of the facts of the offense and because of his background. This claim was not presented to the state courts as one under the Eighth

9

Amendment, nor is it being presented on that basis here. (*See* Brief on Appeal, ECF No. 6-20, at 22-26; *see also* Petition, ECF No. 1 at Pg ID 212.) Rather, Petitioner's claim was presented to the state courts on state-law sentencing principles, particularly based on the holdings in *People v. Lockridge*, 870 N.W.2d 501 (Mich. 2015), and *People v. Milbourn*, 461 N.W.2d 1 (Mich. 1990).

In *Lockridge*, the Michigan Supreme Court determined that the state sentencing guidelines are advisory, rather than mandatory, but it did not give the sentencing court unrestricted discretion to sentence outside of the advisory range. 870 N.W.2d at 520-21. Rather, the Michigan Supreme Court held that when a court sentences outside of the advisory range, the resulting sentence must be reasonable. *Id*. at 521. "Reasonableness" as used in *Lockridge* is determined through the application of the Michigan Supreme Court's decision in *Milbourn*, another case based entirely on state-law sentencing principles. *See People v. Steanhouse*, 902 N.W.2d 327, 331 (Mich. 2017).

"[A] federal court may issue the writ [of habeas corpus] to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting § 2254(a)). Consequently, Hampton's argument that his sentence was "unreasonable" or "disproportionate" as defined in *Lockridge* and *Milbourn* does not state "a claim cognizable in federal habeas corpus." *Atkins v. Overton*, 843 F.

10

Supp. 258, 260 (E.D. Mich. 1994). Hampton's second claim therefore does not state a cognizable basis for granting federal habeas relief.

Because Hampton has failed to demonstrate entitlement to habeas relief based on either of his claims, the petition for writ of habeas corpus is denied.

### IV. Certificate of Appealability

Before Petitioner may appeal this decision, the Court must determine whether to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy § 2253(c)(2), Petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted). The Court finds that reasonable jurists would not debate the resolution of any of Petitioner's claims. Therefore, the Court is denying Petitioner a certificate of appealability.

The Court is granting Petitioner leave to appeal in forma pauperis because any appeal would not be frivolous. 28 U.S.C. § 1915(a)(3).

Accordingly,

**IT IS ORDERED** that Petitioner's application for the writ of habeas corpus is **DENIED WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that Petitioner is **DENIED** a certificate of appealability but is **GRANTED** leave to proceed in forma pauperis on appeal.

**IT IS SO ORDERED.**

                                                 s/ Linda V. Parker
                                                 LINDA V. PARKER
                                                 U.S. DISTRICT JUDGE

Dated: February 15, 2022

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, February 15, 2022, by electronic and/or U.S. First Class mail.

                                                 s/Aaron Flanigan
                                                 Case Manager